UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 14-CV-02752 (JFB)

BINDER & BINDER, P.C.,

Plaintiff,

VERSUS

CAROLYN W. COLVIN,
COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.

**MEMORANDUM AND ORDER**
October 28, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff Binder & Binder, P.C. ("B&B" or "plaintiff") successfully assisted Jay Scott Lerner ("Lerner") in obtaining disability insurance benefits from the Social Security Administration ("SSA" or "defendant"). Although the SSA should have withheld $6,000.00 from Lerner's past-due benefits in order to pay B&B its attorney's fee, the SSA failed to do so. Lerner then filed for bankruptcy, which means that B&B cannot recover the $6,000.00 attorney's fee directly from Lerner.

In the instant case, B&B now seeks a judgment against the SSA in the amount of $6,000.00. B&B and the SSA have filed cross-motions for summary judgment. For the reasons that follow, the Court grants summary judgment in favor of the SSA on the basis of sovereign immunity.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed, or the opposing party has not pointed to any evidence in the record to contradict it.[1]

---

[1] Although the parties' respective Rule 56.1 statements of facts contain specific citations to the record, the Court cites to the Rule 56.1 statement instead of the underlying citation to the record.

1

Lerner applied to the SSA for disability insurance benefits on May 3, 2012. (Def. 56.1 ¶ 1.) Lerner retained B&B to represent him, and he executed a fee agreement with B&B on June 29, 2012 (the "Fee Agreement"). (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 3.) The Fee Agreement provided that if Lerner received a favorable decision on his application, he would pay B&B an attorney's fee amounting to the lesser of either (1) 25% of past due benefits awarded, or (2) $6,000.00, which at that time was the maximum amount set by the Commissioner pursuant to 42 U.S.C. § 406(a). (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 3.) In a letter dated July 24, 2012, Mario Davila ("Davila"), a representative of B&B, informed the SSA that B&B was representing Lerner and enclosed a copy of the Fee Agreement. (Def. 56.1 ¶ 2.)

In a notice dated October 22, 2012, the SSA notified Lerner that his application for benefits had been approved, that he would receive $36,080.00 in past due benefits on or about October 28, 2012, and that he would receive $2,036.00 per month beginning in November 2012. (Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4.)

In a subsequent notice dated February 17, 2013, the SSA advised Davila that he was not authorized to collect a fee for his representation of Lerner because he had failed to register for direct payment with the SSA before the SSA had adjudicated Lerner's benefits claim. (Def. 56.1 ¶ 5.) In a response on B&B's behalf, Davila informed the SSA that he had submitted the Fee Agreement and all other required documents to the SSA before the SSA had adjudicated Lerner's claim. (*Id.* ¶ 9.) On March 26, 2014, the SSA approved the Fee Agreement (*id.* ¶ 11), and by notice dated April 14, 2014, the SSA informed Davila that a fee of $6,000.00 was authorized for B&B's representation of Lerner. (*Id.* ¶ 13; Pl. 56.1 ¶ 6.)

In letters dated April 12 and April 14, 2014, the SSA informed Lerner that it should have withheld $6,000.00 from his past due benefits in order to pay B&B, but that it had "inadvertently released all past-due benefits to you; therefore the lawyer/representative will contact you for the payment of the approved fee of $6,000.00." (Pl. 56.1 ¶ 7; Def. 56.1 ¶¶ 12, 14.) In addition, the SSA stated that if Lerner failed to pay B&B, then the SSA would withhold the amount of the attorney's fee from plaintiff's future benefit payments. (Pl. 56.1 ¶ 7; Def. 56.1 ¶¶ 12, 14.)

However, Lerner had filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York on October 17, 2013. (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 6.) In Schedule F to his petition, Lerner listed B&B as an unsecured creditor, but failed to provide the proper address for B&B. (Pl. 56.1 ¶ 10; Def. 56.1 ¶ 7.) Accordingly, B&B did not object to the discharge of Lerner's debt to B&B (Pl. 56.1 ¶ 10), and the Bankruptcy Court ordered a discharge of Lerner's debts on January 29, 2014. (Def. 56.1 ¶ 10.)

On May 2, 2014—the same date that B&B filed the instant case—B&B moved in the Bankruptcy Court to reopen Lerner's bankruptcy proceeding so that B&B could object to the discharge of Lerner's debt to B&B. (Def. 56.1 ¶ 15.) The SSA first learned of Lerner's bankruptcy around this time. (*See id.* ¶ 17.) In a decision dated

---

However, the Court disregards all assertions in the Rule 56.1 statements that are unsupported by the record. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting that district court may disregard an assertion in a Rule 56.1 statement that is unsupported by record).

2

August 28, 2014, the Bankruptcy Court denied B&B's motion to reopen Lerner's bankruptcy proceeding, though the Bankruptcy Court did acknowledge that SSA had sent $6,000.00 to Lerner "in error." (*Id.* ¶ 19.)

B. Procedural History

Plaintiff commenced this action on May 2, 2014. Defendant answered the complaint on July 2, 2014.

Plaintiff filed the pending motion for summary judgment on August 14, 2014. Defendant filed its opposition and cross-motion for summary judgment on September 18, 2014. Plaintiff filed its reply and opposition to the cross-motion on October 2, 2014. The Court heard oral argument on October 27, 2014. This matter is fully submitted, and the Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751

F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

Where, as here, the parties have filed cross-motions for summary judgment, "the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, --- F. Supp. 2d ----, No. 11-CV-3238 (ALC)(GWG), 2014 WL 988585, at *4 (S.D.N.Y. Mar. 13, 2014) (citing *Sciascia v. Rochdale Village, Inc.*, 851 F. Supp. 2d 460 (E.D.N.Y. 2012)).

III. DISCUSSION

"Under the Social Security Act, 'whenever the [SSA], in any claim before the [SSA] for benefits . . . makes a determination favorable to the claimant, the [SSA] *shall . . . fix . . .* a reasonable fee to compensate such attorney for the services performed by him in connection with [the awarded] claim [for benefits],' or approve or modify a pre-existing fee agreement between the claimant and her attorney." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 150 (2d Cir. 2007) [hereinafter *Binder II*] (quoting 42 U.S.C. § 406(a)(1) and citing 42 U.S.C. § 406(a)(2)(A)) (emphasis, ellipses, and brackets in original). Additionally, "[i]f the claimant is awarded 'past-due' benefits, the SSA '*shall . . . certify* for payment out of such past-due benefits . . . to such attorney an amount equal to so much of the maximum fee as does not exceed 25 percent of such past-due benefits.'" *Id.* (quoting 42 U.S.C. § 406(a)(4)) (emphasis and ellipses in original).[2] In other words, "the SSA ha[s] a statutory duty under the [Social Security] Act to pay [the attorney] the certified fee." *Id.* at 151.

The instant case presents the following legal question: does this statutory duty constitute a waiver of the SSA's sovereign immunity, such that an attorney may sue the SSA to recover the amount of a certified fee from the SSA? For the following reasons, the Court concludes that 42 U.S.C. § 406(a) does not waive the sovereign immunity of the SSA.

It is well settled that the United States and its agencies enjoy sovereign immunity from suit without consent, "'and that the existence of consent is a prerequisite for jurisdiction.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)); *see Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) ("'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994))). Congress can waive that immunity, as it has in the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, and the Tucker Act, 28 U.S.C. § 1491, for instance, but "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Blue Fox*, 525 U.S. at 260–61. The waiver "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke*, 355 F.3d at 150 (quoting *United States v. Nordic*

---

[2] At all relevant times in this case, the maximum fee was $6,000.00. *See* Maximum Dollar Limit in the Fee Agreement Process, 74 Fed. Reg. 6080 (Feb. 4, 2009).

4

*Vill., Inc.*, 503 U.S. 30, 33 (1992)). Thus, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The standard for finding a waiver is strict. For instance, in *Sossamon v. Texas*, the Supreme Court held that the statutory authorization of "appropriate relief against a government" in the Religious Land Use and Institutionalized Persons Act of 2000 does not waive a state's sovereign immunity because the phrase is "open-ended and ambiguous about what types of relief it includes." 131 S. Ct. 1651, 1658–59 (2011).

Applying this strict standard to the instant case, this Court concludes that the Social Security Act's fee statute, 42 U.S.C. § 406, does not waive the sovereign immunity of the United States with respect to monetary claims by attorneys to recover attorneys' fees. Nothing in that statute unambiguously states that the SSA is directly obligated to pay attorneys' fees, or that the failure to withhold attorneys' fees from the claimant opens the SSA to a claim for money damages. Instead, as the Second Circuit has noted, "the SSA fee provision is simply 'a statutory interference with the attorney client contractual relationship[,] which would otherwise be determined by the marketplace for legal services.'" *Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988) (contrasting SSA fee provision with award of fees under Equal Access to Justice Act, which "is based on a waiver of the normal principles of sovereign immunity") (quoting *Coup v. Heckler*, 834 F.2d 313, 324 (3d Cir. 1987), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002)) (brackets in original). As discussed in more detail *infra*, the SSA's statutory duty to withhold the attorneys' fees from the claimant's past-due benefits does not unambiguously express congressional intent to waive the SSA's sovereign immunity whenever the SSA breaches that duty.

This Court's conclusion is consistent with the holdings of the two Courts of Appeals to have considered this issue. In *Pittman v. Sullivan*, the Eighth Circuit held that 42 U.S.C. § 406 "cannot be construed as a waiver of immunity because it contemplates payment of the fee award by the *claimant*, out of past-due benefits, rather than by the government, out of general funds." 911 F.2d 42, 46 (8th Cir. 1990) (emphasis in original; internal quotation marks and citation omitted). The Third Circuit recently reached the same conclusion in *Binder & Binder, P.C. v. Handel (In re Handel). See* 570 F.3d 140 (3d Cir. 2009). *Handel* concerned almost the same factual scenario at issue here: the SSA failed to withhold $10,000 from a claimant's past-due benefits to pay B&B's attorneys' fees, and B&B was unable to collect that fee from the claimant because the claimant had filed for bankruptcy, so B&B sought to collect the $10,000 directly from the SSA. *See id.* at 142–43. Quoting *Coup* (the same Third Circuit decision quoted by the Second Circuit in *Wells*, *supra*), the Third Circuit held that 42 U.S.C. § 406 "'is not a waiver of sovereign immunity, but rather a statutory interference with the attorney client contractual relationship which would otherwise be determined by the marketplace for legal services.'" *Id.* at 144 (quoting *Coup*, 834 F.2d at 324). In other words, according to the Third Circuit, an attorney's fee "does not represent a direct obligation of the federal government," *id.* at 145 n.4, and, therefore, an attorney "has no direct recourse against the Commissioner of Social Security for the unpaid amount," *id.* at 145. This Court finds these decisions a persuasive application of general sovereign immunity principles to 42 U.S.C. § 406.

Additionally, district courts around the country have held that 42 U.S.C. § 406 does not represent a waiver of sovereign immunity. *See Lopez v. Colvin*, No. 11-CV-9-T-TGW, 2013 WL 3786638, at *3 (M.D. Fla. July 18, 2013); *Watkins v. Astrue*, No. CIV.A. 08-163-JBC, 2012 WL 4748826, at *2–3 (E.D. Ky. Oct. 4, 2012); *Hale v. Comm'r of Soc. Sec.*, No. 09-CV-318, 2011 WL 5920914, at *2 n.3 (W.D. Mich. Oct. 25, 2011), *report & recommendation adopted*, 2011 WL 5920769 (W.D. Mich. Nov. 28, 2011); *Galliher v. Astrue*, No. CIV.A 09-40051-FDS, 2010 WL 2204235, at *1–2 (D. Mass. May 26, 2010); *Roberts v. Schweiker*, 655 F. Supp. 1105, 1110 (D. Del. 1987). This Court finds these decisions persuasive, as well, for the same reasons discussed *supra*.

Nothing in the Second Circuit's *Binder II* decision suggests otherwise. *Binder II* did not involve the doctrine of sovereign immunity because, in that case, the SSA sought to recoup an attorney's fee already paid to the plaintiff (B&B), and B&B brought a declaratory judgment seeking a declaration that it did not have to return the money. *See* 481 F.3d at 142. In resolving that issue, *Binder II* held only that 42 U.S.C. § 406 imposes a non-discretionary duty upon the SSA to pay an attorney the certified fee from the claimant's withheld past-due benefits. *See id.* at 150–51. Although *Binder II* recognizes a statutory *duty* on the part of the SSA, the decision does not establish a corresponding remedy of money damages against the SSA for breach of that duty.[3]

Indeed, the Second Circuit has been clear in another decision that the existence of a legal right does not necessarily imply the remedy of money damages against the federal government. *See Adeleke*, 355 F.3d at 150–51. As the Second Circuit has explained, ordinarily "a legal right presumes a remedy," and "[i]n actions involving private parties, federal courts may well have the power to award 'any appropriate relief' to vindicate the right at issue." *Id.* at 150 (quoting *Lane*, 518 U.S. at 196). However, the Supreme Court held expressly in *Lane* that "'sovereign immunity places the Federal Government on an entirely different footing than private parties.'" *Id.* (quoting *Lane*, 518 U.S. at 196). In contrast to suits against private parties, "where the federal government is itself sued, 'the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived.'" *Id.* (quoting *Lane*, 518 U.S. at 197). In other words, even if money damages are an appropriate remedy for the government's breach of a statutory duty, sovereign immunity may bar that remedy. Thus, in *Adeleke*, the Second Circuit held that Federal Rule of Criminal Procedure 41(g), which provides for the return of seized property to a person "aggrieved by an unlawful search and seizure of property or by the deprivation of property," Fed. R. Crim. P. 41(g), "does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property," *Adeleke*, 355 F.3d at 151.

It is for this reason that this Court respectfully disagrees with the decision in *Binder & Binder, P.C. v. Astrue*, which held that "sovereign immunity does not shield the SSA from fulfilling its statutory obligation to a representative for a social security claimant, such as plaintiff, to certify a reasonable fee pursuant to 42 U.S.C.

---

[3] To the extent plaintiff attempts to rely on footnote 4 in *Binder II* to support its position, the Court finds that argument unpersuasive. In fact, to the contrary, footnote 4 in *Binder II* makes clear that the Second Circuit was not reaching the sovereign immunity issue in that case. *See* 481 F.3d at 152 n.4.

§ 406(a), to withhold that amount from any past-due benefits award and then to pay that amount directly to the representative." 848 F. Supp. 2d 230, 242 (E.D.N.Y. 2012). Essentially, that decision concluded that the SSA may be liable to pay an attorney's fee, even where the SSA is unable to collect that amount from a claimant due to the claimant's intervening bankruptcy, because the SSA has a statutory duty to withhold the fee from the claimant and then to pay it to the attorney. *See id.* at 241–44. However, as the Second Circuit made clear in *Adeleke*, the existence of a legal right (in this case, the right to be paid an attorney's fee), does not necessarily imply the right to sue the federal government for money damages. Such a result "may leave some aggrieved parties without relief, but that is inherent in the doctrine of sovereign immunity." *Adeleke*, 355 F.3d at 150–51.[4]

Finally, B&B has also suggested that this case does not pose a sovereign immunity problem at all, because if the SSA is ordered to pay B&B, then the SSA can simply recover the fee from Lerner under the bankruptcy doctrine of recoupment. As a threshold matter, the Court disagrees with B&B's position because, even if the SSA could later recoup the fee from Lerner, holding the SSA directly liable for money damages would still violate the SSA's sovereign immunity. *See Handel*, 570 F.3d at 145 n.4; *cf. Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) (in applying state sovereign immunity under the Eleventh Amendment, holding that "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant"); *Walker v. City of Waterbury*, 253 F. App'x 58, 61 (2d Cir. 2007) (summary order) (holding that a state's entitlement to indemnification from a third party does not vitiate the state's sovereign immunity against a money judgment); *Jones v. Roosevelt Island Operating Corp.*, No. 13-CV-2226 (JSR), 2013 WL 6504428, at *3 (S.D.N.Y. Dec. 11, 2013) ("Controlling precedent makes clear that if the State is obligated to pay at all, it is irrelevant whether the State has insurance or is indemnified."). In other words, the issue of the government's independent ability to obtain recoupment from a third party is irrelevant to whether the government has unambiguously waived its sovereign immunity in the text of the statute with respect to a claim for money damages. In any event, even assuming *arguendo* that recoupment was material to the sovereign immunity analysis, the Bankruptcy Court has already held that B&B "may not seek to collect this debt from [Lerner] directly or indirectly, *through recoupment or otherwise*." *In re Lerner*, 515 B.R. 26, 34 (Bankr. E.D.N.Y. 2014) (emphasis added). Thus, B&B is wrong that the SSA could simply recover the overpaid fee from Lerner through recoupment. *Cf. Baker v. United States*, 100 B.R. 80, 84 (M.D. Fla. 1989) ("The principle of recoupment, however, has been held to be inapplicable to claims of the Social Security Administration for overpayment of benefits." (citing *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir. 1984))). Accordingly, B&B may not sidestep the sovereign immunity bar to this action by suggesting that the SSA could later recoup the $6,000.00 from Lerner.

---

[4] For the same reasons, the Court also disagrees with the only other decision in support of plaintiff's position, *Cloos v. Barnhart*, which held that the doctrine of sovereign immunity did not bar a suit against the SSA for attorneys' fees. *See* No. Civ. A 05-2792, 2006 WL 851175, at *3 (E.D. La. Mar. 13, 2006).

## IV. CONCLUSION

For the reasons set forth herein, the Court denies plaintiff's motion for summary judgment, and grants defendant's motion for summary judgment. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 28, 2014
Central Islip, NY

\*   \*   \*

Plaintiff is represented by Jeffrey Herzberg of Zinker & Herzberg, LLP, 300 Rabro Drive, Suite 114, Hauppauge, NY 11788. Defendant is represented by Loretta E. Lynch, United States Attorney for the Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, NY 11722, by Vincent Lipari, Assistant United States Attorney.